CLARK HILL PLLC
Crane M. Pomerantz
Nevada Bar No.: 14103
Email: cpomerantz@clarkhill.com
1700 S. Pavilion Center Dr., Suite 500
Las Vegas, Nevada 89145
Tel: (702) 697-7545
Fax: (702) 778-9709

*Attorney for Defendant Festus Ebonka*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>FESTUS ONYEMALIOSIA EBONKA,<br><br>Defendant. | CASE NO. 2:22-CR-156-CDS-NJK-1<br><br>**Sentencing Memorandum** |

Defendant Festus Ebonka ("Mr. Ebonka" or the "Defendant"), by and through undersigned counsel, respectfully submits this Sentencing Memorandum. The Defendant respectfully submits that a sentence of three (3) years of probation, consistent with both the Plea Agreement and Pre-Sentence Investigation Report, is sufficient, but not greater than necessary to comply with the relevant sentencing factors set forth in 18 U.S.C. § 3553.

**Points and Authorities**

## I. Introduction

In sentencing Mr. Ebonka, the Court is tasked with the following question: What is the appropriate sentence for a highly educated sixty-four (64) year old defendant, who committed a non-violent misdemeanor offense and has no criminal history? Under the circumstances of this case, a sentence of three (3) years of probation, consistent with the parties' plea agreement, is appropriate and not greater than necessary to effectuate the sentencing goals of 18 U.S.C. §3553.

Mr. Ebonka committed a crime for which he takes full responsibility and for which he is

deeply contrite. Having never been convicted of a crime before, he is ashamed that he is in this position. He respectfully requests, however, that the Court consider the mature and empathetic way he has led his life to this point in imposing a sentence that is consistent with the parties' recommendation in the Plea Agreement.

**II. The Plea Agreement and Pre-Sentence Investigation Report ("PSR").**

On February 4, 2025, Mr. Ebonka entered his guilty plea pursuant to a written plea agreement. He pled guilty to a one count Information alleging Conversion of Government Property, in violation of 18 U.S.C. § 641, a misdemeanor. Pursuant to U.S.S.G. § 2B1.1, the parties calculated an Adjusted Offense Level of eight (8), as follows: To a Base Offense Level of six (6), the parties agreed to a two (2) level enhancement because the loss was greater than $6,500. Plea Agreement at ⁋ 14. A two (2) level downward adjustment was applied because Mr. Ebonka timely accepted responsibility for his crime. Plea Agreement at ⁋ 15. The parties agreed to jointly recommend to the Court that it impose a sentence of three (3) years of probation.

The guideline calculations in the Department of Probation's (the "Department") Presentence Investigation Report ("PSR") are consistent with those in the Plea Agreement. The Department also correctly determined that Mr. Ebonka qualifies for an additional two (2) level downward adjustment because he meets the criteria of a Zero Point Offender pursuant to U.S.S.G. §§ 4C1.1(a)(1)-(10). PSR at ¶ 27. Thus, it calculates a Total Offense Level of four (4).

The Department determined that Mr. Ebonka is in criminal history category I, a result of a total criminal history score of zero (0). PSR at ¶ 45 - 52. Applying criminal history category I to a Total Offense Level of four (4), the Department calculates a guideline range of zero (0) to six (6) months. PSR at ¶ 70. The Department notes that "[s]ince the applicable guidelines range is in Zone A of the Sentencing Table, a sentence of imprisonment is not required…" *Id.* As such, the Department recommends a three (3) year term of probation, consistent with the Plea Agreement.

PSR at ¶ 90.

## II. Argument

### A. The Factors Set Forth in 18 U.S.C. § 3553 Support a Sentence of Three Years of Probation.

The Supreme Court explains that, in sentencing a defendant, the sentencing court should fashion a punishment that "fit[s] the offender and not merely the crime." *Pepper v. United States*, 562 U.S. 476, 487-88 (2011); *see Gall v. United States*, 552 U.S. 38, 52 (2007) ("It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue") (internal citations omitted). Considering the relevant 18 U.S.C. § 3553 factors, a sentence of three (3) years of probation, is sufficient, but not greater than necessary, to accomplish the goals of sentencing.

#### 1. The Nature and Circumstances of the Offense Augur in Favor of a Probationary Sentence.

Mr. Ebonka pled guilty to a single count Information alleging that on or about September 13, 2018 – nearly seven years ago – he caused the submission of a claim to Medicare relating to the administration of the Stivax pain device on a single patient. PSR at ¶¶ 13-14. As the Plea Agreement sets forth, Mr. Ebonka did not intentionally submit this claim, but was "deliberately ignorant to the false nature of this claims, that is, he was aware of a high probability that [the procedure code billed] did not cover the application of the Stivax device and deliberately avoided

//

//

//

//

//

learning the truth."[1] Plea Agreement at ¶ 12.f; PSR at ¶ 15.

In assessing the seriousness of this offense, Mr. Ebonka respectfully requests that the Court consider the following facts in fashioning the appropriate sentence:

- This is a misdemeanor plea;
- The provable loss to the victim was very low (<$10,000);
- The conduct occurred almost seven years ago and Mr. Ebonka's practice has had no substantial billing issues since;
- Mr. Ebonka voluntarily ceased using the Stivax pain device when the Department of Justice raised substantial questions about its use back in 2019; and
- No patients were harmed, physically or financially.

Mr. Ebonka made a very poor decision to submit the claim for the Stivax device without doing further research on the viability of billing for it. He owns his decision, he regrets it, and he is prepared to live with the consequences of it.[2] But if part of the Court's sentencing decision is

---

[1] The Court is well aware that the original Indictment in this case alleged thirteen (13) felony counts of Health Care Fraud, in violation of 18 U.S.C. § 1347. During the change of plea hearing, undersigned counsel perceived that the Court had some reservations about the current misdemeanor resolution before agreeing to accept the Defendant's plea. Undersigned counsel believes the Court is entitled to an explanation on the current resolution. Undersigned counsel believes that there were significant proof problems with the government's case (including the death and/or incapacity of certain alleged victims and the existence of certain evidence secured by the Defendant that tended to show his innocence on one or more of the wire fraud counts). The current resolution represents the parties' best attempt to address the risk of going to trial on the felony wire fraud counts. This explanation should not, in any way, be construed as detracting from Mr. Ebonka's acceptance of responsibility. Mr. Ebonka takes responsibility for his conduct, recognizes that the current resolution is a favorable one in comparison to the charges originally levied against him, and is appreciative to the government for extending this plea offer and to the Court for accepting his plea.

[2] In assessing the appropriate sentence, Mr. Ebonka asks the Court to consider the potential collateral consequences of this plea. He understands that the Medicare program may seek to take administrative action against him as a result of the plea, which could potentially have a profound effect on his ability to earn a living and even practice medicine.

to weigh the seriousness of the offense, the crime to which Mr. Ebonka pled has to be, on a relative basis, among the least serious on which the Court imposes sentence.

**2. Mr. Ebonka's History and Characteristics Further Support a Three Year Term of Probation.**

Mr. Ebonka's personal characteristics justify the sentence sought. The crime for which he has taken responsibility is not the best indicator of his overall character. The PSR depicts a thoughtful and highly educated man who places a premium on caring for his family.

Mr. Ebonka was born in Nigeria, but moved to Jamaica in 1995. PSR at ¶ 45. After spending a year there, he moved to Canada, where he embarked on a successful nursing career. He obtained his nursing diploma in 2000 and a Bachelor of Science in Nursing degree in 2002, both in Ontario, Canada. PSR at ¶ 56. Thereafter, he obtained a Master of Science in Nursing in 2004 in Buffalo, New York and Master of Science in Advance Psychiatric Nursing in 2014 in Mobile, Alabama. He has been continuously licensed by the Nevada State Board of Nursing (the "Board") since 2006. PSR at ¶ 57. According to the Board's website, Mr. Ebonka has never been disciplined by the Board and currently holds the designation Advance Practice Registered Nurse with a specialty in Psychiatric Mental Health. For seven years, between 2005 and 2012, he worked at a state psychiatric hospital caring for patients while earning a modest income. PSR at ¶ 61. He then opened his own practice, where he has worked continuously since. PSR at ¶ 60. He is a serious man who has placed strong emphasis on education and his career.

His devotion to his education and career falls second only to his devotion to his family. Mr. Ebonka met his wife, also a nurse, in Canada. They subsequently married in 2006 and have been continuously married since. PSR at ¶ 48. Mr. Ebonka's wife, who knows him best, characterizes him as a person of high character, describing him as "honest," "reliable" and readily willing to help people who need assistance. PSR at ¶ 51. They have three children together, ages 18, 15, and 11 (Mr. Ebonka also has a 21-year old child from a previous relationship). PSR at ¶

48. Mr. Ebonka and his family lead a quiet lifestyle; they enjoy going to movies and eating out together, and Mr. Ebonka spends a lot of free time attending his children's sporting events. PSR at ¶ 47. Mr. Ebonka is also considerably philanthropic, donating to orphanage homes in his native Nigeria and assisting students with the cost of their education there. PSR at ¶ 47. Beyond traffic infractions, he has never been convicted of a crime, has no history of violence, no history of drug or alcohol abuse, and possesses no weapons in his home. PSR at ¶¶ 32-38, 48, 50.

Mr. Ebonka is a mature and educated family man. His personal characteristics demonstrate that the instant crime is grossly out of character for him and augur in favor of the sentence of probation the parties are jointly recommending to the Court. Such a sentence is appropriate and not greater than necessary to effectuate the sentencing goals of 18 U.S.C. §3553.

**C. Conclusion**

For all of the foregoing reasons, Mr. Ebonka respectfully requests that the Court impose a sentence of three (3) years of probation.

Dated: April 28, 2025

Respectfully submitted,

CLARK HILL PLLC

*<u>/s/ Crane Pomerantz</u>*
Crane M. Pomerantz, Esq.
Nevada Bar No. 14103
1700 S. Pavilion Center Drive
Las Vegas, NV 89135

*Attorneys for Defendant Ebonka*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 28, 2025, I filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

*/s/ Jamie Soquena*
An Employee of CLARK HILL PLLC